Mae **ETHENGAIN**, Plaintiff,

v.

Kenneth O. **HOOK**, District Director, Internal Revenue Service, Defendant.

Mae **ETHENGAIN**, Plaintiff,

v.

**UNITED STATES** of America, Defendant.

Civ. A. Nos. 32695, 37455.

United States District Court
E. D. Pennsylvania.

May 26, 1965.

See also 242 F.Supp. 700.

Edward K. Nichols, Jr., Stephen B. Narin, Narin, Garfinkel & Mann, Philadelphia, Pa., for plaintiff.

Drew J. T. O'Keefe, U. S. Atty., Francis R. Crumlish, Asst. U. S. Atty., Philadelphia, Pa., for defendants.

GRIM, Senior District Judge.

### FINDINGS OF FACT

1. These are suits for recovery of wagering excise taxes for the periods May, 1959 through May, 1961 and special wagering stamp taxes for the periods May 18, 1959 through June 30, 1961.

2. These cases involve the same issue and have been consolidated for trial and decision by the court as stipulated by the parties.

3. The plaintiff is an individual residing at 6252 Spruce Street, Philadelphia, Pennsylvania.

4. On May 18, 1961, officers of the Philadelphia Police entered and searched the plaintiff's home pursuant to a search warrant. Plaintiff was present during this search. During the course of the search special agents of the Internal Revenue Service were called in to assist the police.

5. In the middle upstairs room of plaintiff's home the police and special agents found and seized various notebooks, pads, and papers, an adding ma-

chine, $16,626.42 in cash, over $800 in checks, a telephone, bank money wrappers totaling several thousands of dollars, some used and some unused, and other items. Approximately seventeen of the notebooks or pads seized and several of the loose sheets of paper contained numbers plays showing the amounts bet and in some cases a name and date. In addition, at least 5 of the notebooks contained daily and weekly tabulations of amounts of money received. The notebooks were of the type used by numbers bankers and the tabulations were made in the manner customary to numbers bankers. Totals appearing in the banker's tabulations could be correlated to amounts appearing in the pads containing numbers bets.

6. At least two of the loose sheets of paper contained lists of numbers plays in the plaintiff's handwriting. One of the sheets contained the name "Ollie", also written by the plaintiff; the other contained the name "King", written by her. Both of these names also appeared in several places in the banker's notebooks and numbers pads.

7. The income of the plaintiff and her husband, other than income from the numbers or lottery business was derived principally from the following sources during the period of approximately twenty years preceding the date of the police raid on their home, May 18, 1961:

(a) Plaintiff's husband's salary as a railroad worker, and, at times, a longshoreman. This usually averaged from $4,000 to $5,000 per year.

(b) Plaintiff's earnings as a part-time employee. These totaled less than $3,000 for the entire period.

(c) Rentals from four small buildings purchased during this period. The net income from this source, after expenses and depreciation, was generally less than $1,000 per year.

The plaintiff and her husband did not have any other substantial sources of income. They had six children. At times they may have received some board money from some of them, however, as late as 1959 four of the children were claimed as tax exemptions by the plaintiff's husband on his income tax returns.

8. At the time of the police raid, May 18, 1961, the plaintiff and her husband had bank accounts which totaled in excess of $25,000 in five banks in the Philadelphia area. They also owned on that date, in some instances subject to mortgages or other outstanding obligations, four pieces of rental property, a one family home, an automobile, miscellaneous household appliances and furniture. The above-listed property and money was in addition to the $16,626.42 in cash and over $800 in checks found in their home. The income of plaintiff and her husband, other than income from the numbers or lottery business, was insufficient to account for the accumulation of money and property owned by them on May 18, 1961.

9. On May 18, 1961, after the police raid the plaintiff was questioned by special agents of the Internal Revenue Service. She stated that she had been in the numbers business for two years, that she had heard of the special wagering tax stamp but had not purchased one nor paid any taxes on the wagers received by her and that the evidence found in her home spoke for itself.

10 The plaintiff, during the two year period preceding the police raid of May 18, 1961, was engaged in the operation of a numbers or lottery business. The plaintiff willfully failed to obtain wagering tax stamps for the period from May 18, 1959 through June 30, 1961, and willfully failed to file federal wagering excise tax returns and to pay the taxes due on wagers received in this business for the periods from May, 1959 through May, 1961.

11. On May 19, 1961, the District Director of Internal Revenue made the following assessments against plaintiff:

| | |
|---|---|
| Wagering excise taxes | |
| (5–18–59 — 5–18–61) | $12,560.00 |
| Penalty | 5,870.00 |
| Interest | 611.46 |
| | $19,041.46 |

Special Wagering Stamp
taxes (5–18–59 —
| | | |
|---|---|---|
| 5–18–61) | $ | 108.34 |
| Penalty | | 54.17 |
| Interest | | 9.32 |
| | $ | 171.83 |

12. The assessments set forth in Finding 11, plus accrued interest of $1,-334.38 and a lien fee of $2, were satisfied by the following payments:

| | |
|---|---|
| July 10, 1961 | $ 7,765.18 |
| April 10, 1963 | 12,784.49 |
| | $20,549.67 |

13. On September 12, 1962 the plaintiff filed a claim for refund in the amount of $7,765.18, the amount theretofore paid on the assessments. The claim contained a claim for abatement of the balance of the pending assessments.

14. On January 22, 1963 the plaintiff filed the original complaint in Civil Action No. 32695, 242 F.Supp. 700. On February 15, 1963 the District Director mailed the statutory notice of disallowance of the claim described in Finding 13.

15. Subsequently on April 25, 1963 plaintiff filed a claim for refund in the amount of $20,549.67 plus interest. This claim included the amounts previously claimed in the earlier claim referred to in Finding 13 plus the amounts paid subsequent to the date of that earlier claim. On March 6, 1964, the District Director mailed the statutory notice of disallowance of the later claim.

16. On October 28, 1964, plaintiff was permitted to file and subsequently did file an amended complaint in Civil Action No. 32695 and on February 15, 1965 the complaint in Civil Action No. 37455 was filed.

## CONCLUSIONS OF LAW

1. Any finding of fact which may be considered a conclusion of law is hereby concluded as a matter of law.

2. The court has jurisdiction of these cases under Title 28 U.S.C., Section 1346 (a) (1).

3. The plaintiff has not maintained the burden of proof of the essential elements and facts of the complaint in either case.

4. The law is with the defendants and against the plaintiff on the issues of the complaint and the answer in each case.

5. Each person engaged in the business of accepting wagers is liable for wagering excise taxes on all wagers placed with him and is liable for a special tax of $50 per year. Each person who conducts any wagering pool or lottery is liable for wagering excise taxes on all wagers placed in such pool or lottery, and is liable for a special tax of $50 per year. The term "lottery" includes the numbers game. Sections 4401, 4411 and 4421(2), Internal Revenue Code of 1954.

6. During the period May 18, 1959 to May 18, 1961 the plaintiff was engaged in the business of accepting wagers and was conducting a lottery. The plaintiff was therefore liable for wagering excise taxes and the special $50 taxes during that period. The plaintiff knowingly and willfully failed to file excise tax returns and to pay wagering excise taxes and the special $50 tax for the period May 18, 1959 through May 18, 1961.

7. The Commissioner of Internal Revenue lawfully assessed and collected the wagering excise taxes and special $50 taxes which plaintiff here seeks to recover.

Judgments will be rendered for the defendants against the plaintiff on the issues of the respective pleadings in each case and costs will be assessed against the plaintiff.